IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 15, 2011 Session

## MARK SMALLMAN ET AL. V. LINDA CARAWAY ET AL.

**Appeal from the Chancery Court for Hamblen County**
**No. 2009P120 & 2009440     Thomas R. Frierson, II, Chancellor**

_____

### No. E2010-02344-COA-R3-CV-FILED-DECEMBER 12, 2011

_____

CHARLES D. SUSANO, JR., J., dissenting.

This case pits the biological children of the deceased, being two sons, against Linda Caraway, who claims to be the widow of the deceased by virtue of a marriage ceremony that occurred thirteen days before his death on July 7, 2009. What is "on the line" is apparently the entire estate of the deceased. One of his sons testified that his father's will of April 16, 2009 – the original of which was never found – left the deceased's entire estate to Ms. Caraway.

The jury in this case sided with the children on all issues, finding (1) that the "marriage" of the deceased and Ms. Caraway was not valid; (2) that a photocopy of the deceased's will of April 16, 2009 – the photocopy was available – should not be admitted to probate under the theory of a "lost will"; (3) that the deceased was not of sound mind when he executed the will; and (4) that the will was secured by the undue influence of Ms. Caraway.[1] The result of the jury's findings is that Ms. Caraway went from taking all of the deceased's estate to taking nothing. It was a complete victory for the children of the deceased.

As I see it, the very serious problem in this case is the introduction of irrelevant evidence that I find to be highly prejudicial to Ms. Caraway. The majority holds, and I agree, that evidence pertaining to (1) the will of Ms. Caraway's mother and (2) Ms. Caraway's real estate holdings, was not relevant to any issue in this case. Prior to trial, Ms. Caraway filed

_____

[1]These last two findings appear to be somewhat gratuitous since the jury found that the photocopy of the will of April 16, 2009, should not be admitted to probate as a true copy of a "lost will."

a motion in limine seeking to prevent the introduction of this irrelevant evidence. The trial court denied the motion as to the real estate holdings, thus paving the way for the later introduction into evidence of an exhibit reflecting these substantial holdings. As to the evidence related to the will of Ms. Caraway's mother, the trial court ruled it could come into evidence *because* the sons of the deceased advised the court that a witness, Wesley Wills, would testify that Ms. Caraway was instrumental in having her mother's will prepared and executed and that other family members were excluded to Ms. Caraway's advantage. Mr. Wills was never called as a witness[2] nor were any other witnesses called to testify on this subject.

The situation pertaining to Ms. Caraway's real estate holdings is particularly troubling. The introduction of the exhibit specifying her holdings was prefaced by the following questions/comments on cross examination of Ms. Caraway:

> Q. Now, you have an [sic] extensive holdings of real property, don't you?
>
> A. The truth – What does "extensive" mean?
>
> Q. Well, read that two pages there. You've got the values there and one, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 –
>
> Mr. Reams [attorney for Ms. Caraway]: Your Honor, we would note the same objection. I understand the Court has ruled on this issue, but for the record we would note our objection.
>
> Mrs. Stapleton [attorney for Smallman brothers]: Thank you.
>
> The Court: Overruled.
>
> Q. (By Mrs. Stapleton) As I just roughly calculate by eyeballing it, and I – it's more than a million dollars. 1.5 million in real property, don't you?
>
> A. I don't know, ma'am.

---

[2]I have serious reservations as to whether the evidence pertaining to the execution of the will of Ms. Caraway's mother would have been admissible even had Mr. Wills testified.

Q. This is what we're going to introduce as a response that you made in discovery, under oath, correct?

A. Yes, ma'am.

Q. This is an attachment to your Interrogatories.

A. Yes, ma'am. I mean I haven't added them up. This is a true paper. I just haven't added them up.

Q. So, whatever values you put on there and the jury looks at, that's correct, isn't it?

A. Yes, ma'am, to the best of my knowledge.

     Mrs. Stapleton: Let's make that as the next numbered exhibit, please.

     The Court: So admitted.

(Exhibit 11 was marked.)

What did her holdings have to do with any issue in this case? The answer is clearly a resounding "*nothing*"!

I agree with Ms. Caraway that the evidence pertaining to the will of her mother was offered solely for the purpose of portraying Ms. Caraway as a *bad person*.[3] I also believe the "real estate" evidence was presented to engender in the minds of the jurors a belief that Ms. Caraway had a relatively large personal estate and really did not need the deceased's estate. Together, the evidence was designed – and, I believe, intended by the sons for this purpose – to convince the jury that Ms. Caraway married the deceased "for his money," as the saying goes.

---

[3]After the will of Ms. Caraway's mother was introduced into evidence during the cross examination of Ms. Caraway, counsel for the sons posed the following question to her:

> Now, it's fair to say that you're basically – to use a term I think we can all understand – you're playing with house money here, aren't you? You don't have anything to lose in coming here today and trying to get a million dollars, do you?

In addition to being a skewed analogy, this comment of counsel further evidences the position advanced by the sons that Ms. Caraway is a "gold digger."

In evaluating the issue of the harmful versus harmless effect of this irrelevant evidence, I believe it is important to recognize that, from an evidentiary standpoint, this case appears to have been a very close one on all of the issues before the jury. Both sides appear to have had disinterested as well as interested witnesses on every issue. It seems to me that the introduction of this highly prejudicial evidence was an error "involving a substantial right [that] more probably than not affected the judgment" of the jury; I also believe that to leave this error uncorrected "would result in prejudice to the judicial process." *See* Tenn. R. App. P. 36(b). In this close case, the jury pitched a "shutout" – everything for the sons and nothing for Ms. Caraway. Under the circumstances, I cannot help but believe[4] that the jury, at least in part, concluded (1) that Ms. Caraway was a "gold digger" who did not need the estate of the deceased and (2) that, in securing the deceased's signature on a will, she had repeated a "trick" that she had refined when she persuaded her mother to execute a will favorable to Ms. Caraway and against the interests of some of her kin. In other words, I believe the sons of the deceased were successful in their efforts to severely prejudice the position of Ms. Caraway with irrelevant evidence. I do not believe they should be rewarded for their efforts by an affirmance of what is probably a tainted jury verdict.

I would reverse the trial court's judgment entered on the jury's verdict and remand for a new trial. Accordingly, I respectfully dissent.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[4]Obviously, we cannot "jump" into the jurors' minds and we do not know for certain what prompted the jury's decision; but, in evaluating the effect of the introduction of irrelevant evidence, we must assess the probability, or lack thereof, of a nexus between the error and the jury's verdict.